Case 4:24-cv-03300   Document 30   Filed on 06/26/25 in TXSD   Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
July 02, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT GARNER a/k/a SCOTT GARNER, *individually and on behalf of all others similarly situated,*     *Plaintiff,* § § § § § | | |
| v. | § § § § § | CIVIL ACTION NO. 4:24-CV-3300 |
| AXIP ENERGY SERVICES, LP     *Defendant.* | | |

**ORDER**

Pending before the Court is Defendant Axip Energy Services, LP's ("Axip Energy") Rule 12(b)(1) & 12(b)(6) Motion to Dismiss. (Doc. No. 16). Plaintiff requested numerous extensions of time to respond to the motion, (Doc. Nos. 20, 23, 25, 27), but never actually filed any response. Upon consideration of the law and the arguments, the Court hereby **GRANTS** Defendant Axip Energy's Motion to Dismiss. (Doc. No. 16).

**I.      Background**

This lawsuit arises out of a ransomware attack on Axip Energy's computer system, which occurred between March 1, 2024 and May 6, 2024. After learning of the breach, Axip Energy investigated and engaged with cybersecurity professionals to contain and redress the breach. In addition to installing enhanced security and privacy storage measures, Axip Energy also offered free credit monitoring to those whose data had been potentially compromised.

Plaintiff filed his Original Complaint on September 5, 2024 as a "nationwide class action" seeking to represent "[a]ll persons residing in the United States whose PII was compromised during the Data Breach that is the subject of the Notice of Data Breach published by Defendant on or about August 21, 2024 ("the Class")." (Doc. No. 1 at 29). Plaintiff then filed a First Amended Complaint, alleging the following causes of action: (1) negligence; (2) negligence per se; (3) unjust

enrichment; (4) breach of implied contract; (5) breach of implied covenant of good faith and fair dealing; and (6) declaratory judgment and injunctive relief. (Doc. No. 15 at 28–41). Plaintiff's alleged injuries are based on the exposure of his personal identifiable information ("PII"). Specifically, he cites the unauthorized use of his PII to open a bank account in his name, the heightened risk that his PII will be used fraudulently, and the resulting anxiety and emotional harm that has resulted from that risk. Based on these alleged injuries, he seeks damages based on the time and money spent monitoring his accounts in the past, and the time and money that he claims he will spend in the future. In addition, Plaintiff seeks an injunction requiring Axip Energy to act in accordance with statutory mandates.

## II. Legal Standard

### A. Rule 12(b)(1)

A federal court has original jurisdiction to hear a suit when it is asked to adjudicate a case or controversy that arises under federal-question or diversity jurisdiction. U.S. Const., art. III, § 2, cl. 1; 28 U.S.C. §§ 1331–32. Whether a federal court has jurisdiction must "be established as a threshold matter" and "is inflexible and without exception." *Webb v. Davis*, 940 F.3d 892, 896 (5th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)).

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "lack of subject matter jurisdiction." When considering a motion to dismiss under Rule 12(b)(1), a court must "accept the complaint's well-pleaded factual allegations as true." *Carver v. Atwood*, 18 F.4th 494, 496 (5th Cir. 2021). Dismissal for lack of subject-matter jurisdiction is appropriate "when the plaintiff does not 'plausibly allege all jurisdictional allegations.'" *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021) (quoting *Brownback v. King*, 592 U.S. 209, 217 (2021)). "For a 12(b)(1) motion, the general burden is on the party asserting jurisdiction." *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021). "When a Rule 12(b)(1) motion is filed with

other Rule 12 motions, the court should consider the Rule 12(b)(1) motion 'before addressing any attack on the merits.'" *D&G Holdings, L.L.C. v. Becerra*, 22 F.4th 470, 474 (5th Cir. 2022) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, "a plaintiff must show: (i) that [he] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560–61). "As the party invoking federal jurisdiction," Plaintiff "bear[s] the burden of demonstrating" standing to bring the claims alleged. *Id.*

### B. Rule 12(b)(6)

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Similarly, a plaintiff may file a Rule 12(b)(6) motion to dismiss a counterclaim. *See Kansas v. Nebraska*, 527 U.S. 1020 (1999). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III. Analysis

Axip Energy makes several arguments to support dismissal of Plaintiff's Amended Complaint. The first and most prominent argument is that Plaintiff lacks standing. (Doc. No. 17 at 9). The Court agrees with Axip Energy in part. Nevertheless, because Plaintiff does allege some concrete injuries, the Court finds that Plaintiff has standing. is therefore without jurisdiction to address the merits of Plaintiff's claims. Even though Plaintiff alleged a constitutional injury, Plaintiff's Amended Complaint still fails under Axip Energy's Rule 12(b)(6) challenge.

#### A. Article III Standing

##### a. Legal Background

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. The doctrine of standing gives meaning to these constitutional limits by ensuring that plaintiffs have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Massachusetts v. EPA*, 549 U.S. 497 (2007) (quoting *Baker v. Carr*, 369 U.S. 186 (1962)) (internal quotation marks omitted). Whether a plaintiff has standing presents a "threshold question in every federal case [because it determines] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

4

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Ctr. for Biological Diversity*, 937 F.3d 533, 537 (5th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339. "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id.*

In a recent Supreme Court case, a class of plaintiffs brought suit against TransUnion, a credit reporting agency, alleging that TransUnion failed to maintain accurate credit files. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). The Supreme Court found standing for plaintiffs whose credit files had been disseminated to third-party business but denied standing to plaintiffs whose reports had not been disseminated to others. *Id.* The Supreme Court rejected the notion that misleading credit files which could be disseminated to third parties in the future qualified as a concrete injury. *Id.* at 435. Since the threat of dissemination was no more than a risk of future harm, the Court denied standing to that subclass. *Id.* at 435–37.

The Fifth Circuit has not dealt with Article III standing in a data breach case since the Supreme Court's *TransUnion* opinion. Nevertheless, the Fifth Circuit did address a similar standing issue in *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 820 (5th Cir. 2022). There, a plaintiff sued a law firm for sending a debt collection letter without disclosing that limitations on the debt had run. The plaintiff did not pay the debt, but lost time by verifying that her debt's limitations had run. *Id.* The Fifth Circuit dismissed the case for lack of standing, finding that the risk of financial harm never materialized and, therefore, did not constitute a concrete injury. *Id.* at 823–25.

Other circuits have directly analyzed standing in data breach cases following *TransUnion*. In *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023), the First Circuit dealt with a putative class action against a home-delivery pharmacy service that suffered a data breach allowing third parties to access the plaintiffs' personal information. Following the data breach, an unauthorized third party filed a fraudulent tax return in the name of Alexsis Webb, one of the lead plaintiffs. *Id.* at 373. The circuit court found this was evidence of actual misuse and easily sufficed to establish injury. *Id.* While another lead plaintiff had not shown misuse of her personal information, the First Circuit still found that she had standing because the misuse of Webb's information plausibly made the misuse of the other plaintiff's information imminent and substantial. *Id.* at 374–77. Still, the First Circuit found the plaintiffs lacked standing as to their request for injunctive relief, noting that there was no clear evidence a future breach would occur. *Id.* at 378.

The Third Circuit reached a similar conclusion in 2022. In *Clemens v. Execupharm, Inc.*, 48 F.4th 146, 150 (3d Cir. 2022), a company was hacked, exposing its employees' information to those hackers. The plaintiff then took protective measures to monitor her information, including buying credit monitoring services. *Id.* The plaintiff then sued to recover these mitigation costs and compensate for the risk of future identity theft. *Id.* The Third Circuit found standing, noting that "if the plaintiff's knowledge of the substantial risk of identity theft causes him to presently experience emotional distress or spend money on mitigation measures like credit monitoring services, the plaintiff has alleged a concrete injury." *Id.* at 156.

The Second Circuit dealt with near-identical facts in *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 285 (2d Cir. 2023). The Second Circuit similarly found standing because "exposure of [Plaintiff's] PII to unauthorized third parties [ ] bears some relationship to a well-established common-law analog: public disclosure of private facts." *Id.* The Second Circuit

6

also credited the mitigation cost theory of standing, noting that expenses associated with prevention and detection of identity theft constituted concrete harms. *Id.*

Finally, the Eleventh Circuit found a concrete injury where "hackers took credit card data and corresponding personal information from the Chili's restaurant systems and affirmatively posted that information for sale" to third parties. *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023), *cert. denied sub nom. Brinker Int'l, Inc. v. Steinmetz*, 144 S. Ct. 1457 (2024). Nonetheless, a concurring opinion emphasized that "a mere data breach does not, standing alone, satisfy the requirements of Article III standing" nor would the sole "increased risk" of identity theft. *Id.* at 895 (Branch, J., concurring).

### b. *Plaintiff's Injury-in-Fact*

Plaintiff's Amended Complaint makes numerous allegations that a data breach occurred, and that Plaintiff and the putative class are now faced with a lifetime risk of identity theft or fraud. (Doc. No. 15 at 3). Further, Plaintiff alleges that Axip Energy's negligence caused the data breach, and that there is a significant risk of future harm. Based on these allegations, the Amended Complaint lists the injuries suffered as, among others:

> the invasion of privacy; the compromise, disclosure, theft, and imminent unauthorized use of Plaintiff's and the Class's PII; emotional distress, fear, anxiety, nuisance, and annoyance related to the theft and compromise of their PII; lost or diminished inherent value of PII; out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; the continued and increased risk to their PII.

(*Id.* at 5–6). Further, Plaintiff specifically alleges that his information was used to open a fraudulent bank account in his name. Taking Plaintiff's factual allegations as true, some of the allegations are sufficient to establish an Article III injury-in-fact.

To start, Plaintiff pled that adverse action was taken with his data. Plaintiff alleged that an unauthorized bank account was opened using his PII and, as a result, he was forced to spend money on credit monitoring and identity security. (Doc. No. 15 at 7). Plaintiff did not allege that this

7

action caused any direct financial loss. While no clear rule has been established in the Fifth Circuit, other circuits and courts within this circuit are split on the question of whether a fraudulent act that did not result in actual financial loss is sufficient to establish a concrete injury.

The First, Second, and Third Circuits have all recognized a constitutional injury in data breach cases where the Plaintiff had not yet been held financially responsible for a fraudulent use of their data. *See Webb*, 72 F.4th at 373; *Bohnak*, 79 F.4th at 285; *Clemens*, 48 F.4th at 150. Other Circuits came to similar results prior to the United States Supreme Court's opinion in *TransUnion*. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691-95 (7th Cir. 2015) (explaining that "customers should not have to wait until hackers commit identity theft or credit-card fraud in order to give the class standing, because there is an 'objectively reasonable likelihood' that such an injury will occur"); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021) (identifying both "identity theft and damages resulting from such theft" as concrete injuries); *Attias v. CareFirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017) ("Nobody doubts that identity theft, should it befall one of these plaintiffs, would constitute a concrete and particularized injury.").

At the same time, a few circuits have applied a more rigorous test, requiring Plaintiff to have suffered actual incidents of misuse and loss to satisfy standing. *See In re SuperValu, Inc.*, 870 F.3d 763, 769-70 (8th Cir. 2017) (plaintiffs lacked standing because they did not allege that their personal information was actually misused); *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1345 (11th Cir. 2021) (noting that a plaintiff cannot "conjure standing . . . by inflicting injuries on himself to avoid an insubstantial, non-imminent risk of identity theft"); *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 895 (11th Cir. 2023) (stating that "a mere data breach does not, standing alone, satisfy the requirements of Article III standing" nor would the sole "increased risk" of identity theft) (Branch, J., concurring).

District courts within the Fifth Circuit are also split on the issue. Some courts have held that occurrences which might even be "consistent with" data misuse do not themselves "plausibly suggest" that any "actual misuse of Plaintiff's personal identifying information has occurred." *Logan v. Marker Group, Inc.*, No. 4:22-CV-00174, 2024 WL 3489208, at *5 (S.D. Tex. July 18, 2024); *Green v. eBay Inc.*, No. 2:14-CV-01688, 2015 WL 2066531, at *4 (E.D. La. May 4, 2015) (holding that conclusory statements alleging actual incidents of identity theft are insufficient to establish an injury-in-fact when "plaintiffs were not held financially responsible for paying such charges"); *Williams v. Bienville Orthopaedic Specialists, LLC*, 737 F. Supp. 3d 411, 421 (S.D. Miss. 2024), *appeal dismissed sub nom. Williams v. Bienville Orthopaedic Specialists, L.L.C.*, No. 24-60365, 2024 WL 5330715 (5th Cir. Sept. 6, 2024) (holding that plaintiffs did not have standing "because they have not alleged misuse or actual access of their private information"). In those cases, without an actual financial loss due to a successful fraudulent action the plaintiffs were without standing.

By contrast, several courts have found that mitigation expenses and emotional distress caused by the risk of data misuse are sufficient constitutional injuries. *See In re ESO Sols., Inc. Breach Litig.*, No. 1:23-CV-1557-RP, 2024 WL 4456703, at *5 (W.D. Tex. July 30, 2024) (holding that mitigation and emotional damages are concrete injuries and explaining that "[t]his conclusion aligns with other circuit precedent, which similarly recognizes mitigation damages as a concrete injury when taken in response to the substantial threat of harm"); *Smith v. Am. Pain & Wellness, PLLC*, 747 F. Supp. 3d 989, 1003 (E.D. Tex. 2024) (finding that plaintiffs had Article III standing based on the exposure of their personal data to third-parties with the risk of fraudulent activity).

Here, Plaintiff has cleared the injury-in-fact requirement by some distance. Not only did the Plaintiff allege that he suffered emotional distress and mitigation costs after his data was breached, but he also pleaded an actual instance of fraudulent activity—the materialization of the

heightened risk causing emotion distress is well within the kinds of injuries contemplated in the case law. *See Perez*, 45 F.4th at 822. Thus, whether or not the Fifth Circuit eventually aligns with the First, Second, and Third Circuits, or whether is reads *TransUnion* far more stringently, Plaintiff has satisfied the injury-in-fact requirement here.

### c. Traceability

For a plaintiff to have standing, he must sufficiently plead "a causal connection between the injury and the conduct complained of." *Ctr. for Biological Diversity*, 937 F.3d at 542. The injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (quoting *Lujan*, 504 U.S. at 560). Standing does not exist "where the injury 'depends on the unfettered choices made by independent actors not before the court and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict.'" *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024) (quoting *Lujan*, 504 U.S. at 562).

Here, Plaintiff's concrete injuries have been plausibly alleged to have resulted from the data breach. Indulging every reasonable inference for the Plaintiff, the fraudulent use of his personal information to open an unauthorized bank account soon after Axip Energy's data was stolen creates a plausible inference of causality. True, personal information can be stolen in a myriad of ways. Nevertheless, reading the Amended Complaint as a whole, the Court finds a plausible inference of causality between the data breach and the misuse of Plaintiff's data. Thus, there are sufficient allegations of traceability.

### d. Redressability

To satisfy redressability, a plaintiff "must show that a favorable decision will relieve the discrete injury to [himself]." *Book People, Inc. v. Wong*, 91 F.4th 318, 332 (5th Cir. 2024) (internal quotations omitted). Further, it must be "likely, as opposed to merely speculative, that the injury

will be redressed by a favorable decision." *Id.* Redressability is not satisfied if "a ruling from the Court would not prevent [third parties] from contacting [Plaintiff] or otherwise disgorge them of [his PII]." *Peters*, 74 F. Supp. 3d at 857.

Here, Plaintiff has shown a concrete injury that allegedly resulted in mitigation costs and emotional distress. These harms are plainly within the sphere of injuries long-accepted as remediable by economic damages. A remedial issue does arise with the injunctive relief that Plaintiff seeks. Since an injunction against Axip Energy would in no way prevent data thieves or fraudsters from using the information already stolen, Plaintiff has not pleaded any remedial connection to his claims against Axip Energy. Without any reference to the required elements for injunctive relief or how Axip Energy could be enjoined to prevent the criminal acts of third parties, Plaintiff has not shown that he has standing to pursue injunctive relief. Therefore, Plaintiff has standing to pursue remedial damages but not injunctive relief.

### B. Rule 12(b)(6)

While Plaintiff has adequately alleged constitutional standing for some of his claims, Plaintiff's claims nevertheless fail under Axip Energy's Rule 12(b)(6) challenge. Plaintiff alleges six causes of action: (1) negligence; (2) negligence per se; (3) unjust enrichment; (4) breach of implied contract; (5) breach of implied covenant of good faith and fair dealing; and (6) equitable relief. The Court will address each claim in turn.

#### a. Negligence

Under Texas law, the elements of a negligence are: (1) a legal duty; (2) a breach of that duty; and (3) damages proximately caused by the breach. *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). The threshold inquiry "is whether the defendant owes a legal duty to the plaintiff." *Centeq Realty v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The existence of a duty is a question of law. *Nabors Drilling U.S.A., Inc. v. Escoto*, 288

11

S.W.3d 401, 404 (Tex. 2009). "Generally, a person has no legal duty to protect another from the criminal acts of a third person." *Id.* (citing *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)); *see also Doe v. Apostolic Assembly of Faith in Christ Jesus*, 452 F. Supp. 3d 503, 517 (W.D. Tex. 2020) ("[T]here is no duty to control the conduct of third persons.").

Plaintiff has failed to adequately allege how Axip Energy's conduct breached any duty to act reasonably. Presuming that Axip Energy owed Plaintiff a duty to take reasonable measures to protect Plaintiff's PII, Plaintiff makes no allegations about what steps, if any, Axip Energy took and why its conduct fell below the reasonably prudent person (or company) standard. The Amended Complaint includes plenty of conclusory statements like "Defendant knew or should have known that its security practices did not adequately safeguard the PII of Plaintiff and the class." (Doc. No. 15 at 30). The only allegation specific to Axip Energy, however, is that it failed to comply with industry best practices. These statements are entirely devoid of factual specificity—every allegation made could be plausibly claimed about *any* company that experiences a data breach. Plaintiff makes no factual allegations about what Axip Energy did or failed to do. Rather, Plaintiff provides nothing but legal conclusions that Axip Energy had an unspecified duty, and that its unspecified actions breached that duty. Plaintiff fails to adequately plead a negligence claim under Rule 12(b)(6), and the claim is therefore **DISMISSED**.

### b. Negligence *per se*

In Texas, negligence *per se* "is a common-law doctrine in which a duty is imposed based on a standard of conduct created by a penal statute rather than on the reasonably prudent person test used in pure negligence claims." *See Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997). To determine whether a given statute may be the basis for a negligence *per se* claim, Texas courts must "consider whether recognizing such an accompanying civil action would be inconsistent with legislative intent." *Reeder v. Daniel*, 61 S.W.3d 359, 362 (Tex. 2001). "Under Texas law, when a

12

legislative body declines to provide for an individual private right of action in a statute and instead provides for a comprehensive regulatory scheme with limited private remedies, that statute will not be an appropriate basis for a negligence *per se* claim. *Merritt*, 940 S.W.2d at 607–08; *Reeder*, 61 S.W.3d at 362–63. In other words, Texas courts "will not disturb the Legislature's regulatory scheme by judicially recognizing a cause of action" not contemplated in the statute. *Reeder*, 61 S.W.3d at 364.

Plaintiff first argues that Axip Energy is liable for negligence *per se* based on its violation 15 U.S.C. § 45 ("FTC Act"). (Doc. No. 15 at 33–34). Specifically, Plaintiff alleges that "Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and comply with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable harm." (*Id.* at 33).

To start, in a negligence *per se* cases, whether an actor's conduct was "particularly unreasonable" is inapposite to the question at hand. Nevertheless, in accordance with other district courts in this circuit, the Court finds that the FTC Act cannot support a negligence per se claim. *See, e.g.*, *Smith v. Am. Pain & Wellness, PLLC*, 747 F. Supp. 3d 989, 1002 (E.D. Tex. 2024). As stated above, in Texas, "when a legislative body declines to provide for an individual private right of action in a statute . . . that statute will not be an appropriate basis for a negligence per se claim. *Merritt*, 940 S.W.2d at 607–08. The FTC Act does not provide for private causes of action. *See Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 176 (5th Cir. 2016). As such, the violations of the FTC Act cannot support a negligence per se claim.

Next, Plaintiff alleges that Axip Energy violated Title II of HIPAA. (Doc. No. 15 at 33). Presuming for a moment that Axip Energy could somehow be subject to HIPAA, this argument suffers the same fate. Plaintiff cannot support a negligence per se claim on this ground because "there is no private cause of action under HIPAA." *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir.

13

2006). Thus, Plaintiff has not adequately pleaded a valid a negligence per se claim. This claim is therefore **DISMISSED**.

    *c. Unjust Enrichment*

Plaintiff also asserts an unjust enrichment cause of action. Texas law is not completely clear as to whether unjust enrichment constitutes an independent cause of action rather than a theory of restitution used when calculating damages. *Compare Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (finding that unjust enrichment is an independent cause of action), *with Davis v. OneWest Bank N.A.*, No. 02-14-00264-CV, 2015 WL 1623541, at *1 (Tex. App.—Fort Worth, Apr. 9, 2015, pet. denied) (finding that unjust enrichment is not an independent cause of action); *see also Perales v. Bank of Am., N.A.*, No. CIV.A. H-14-1791, 2014 WL 3907793, at *3 (S.D. Tex. Aug. 11, 2014). Nevertheless, whether unjust enrichment is characterized as a cause of action or a theory of recovery, the elements are clear.

"A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 384 (5th Cir. 2020) (citing *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). Unjust enrichment claims are based on quasi-contract and are predicated on the absence of an express contract controlling the circumstances. *See Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000); *Matter of KP Eng'g, L.P.*, 63 F.4th 452, 457 (5th Cir. 2023).

Plaintiff does not clearly state what alleged benefit Axip Energy received. Plaintiff seems to contend that Axip Energy benefited from receiving Plaintiff's PII alone. This is insufficient because PII itself does not have any monetary benefit unless the information has already been monetized. *See, e.g., In re Am. Med. Collection Agency, Inc. Consumer Data Sec. Breach Litig.*,

14

No. 2:19-CV-02904, 2021 WL 5937742, at *10 (D.N.J. Dec. 16, 2021) (finding that when courts have adopted a theory of injury based on diminution in value, the cases "involved circumstances where the defendants collected information that was itself monetized and used for commercial purposes"); *see also Logan*, 2024 WL 3489208, at *7 (collecting cases). Further, Plaintiff does not plead fraud, duress, or undue advantage, and he does not show how Axip Energy obtained a benefit through the data breach. Thus, Plaintiff's Unjust Enrichment claim is **DISMISSED**.

### d. Breach of Implied Contract

Under Texas law, "[t]he elements of a contract, express or implied, are identical." *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (internal quotation marks omitted); *Electrostim Med. Services, Inc. v. Health Care Serv. Corp.*, 614 Fed. App'x. 731, 744 (5th Cir. 2015). "[T]he real difference between express contracts and those implied in fact is in the character and manner of proof required to establish them." *Haws & Garrett Gen. Contractors., Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972). "In each instance there must be shown the element of mutual agreement which, in the case of an implied contract, is inferred from the circumstances." *Id.* To plead existence of a valid, implied contract, a plaintiff must allege: (1) offer; (2) acceptance; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Id.* Finally, an implied contract must have sufficiently definite terms to enable the Court to determine the parties' legal obligations. *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, No. 11-cv-1355, 2016 WL 7177881, at *6 (S.D. Tex. Dec. 8, 2016).

Here, Plaintiff fails to adequately allege the existence of an implied contract and how Axip Energy breached that contract. Plaintiff's factual allegations regarding the implied contract are, in their entirety, as follows:

> Plaintiff and the Class entrusted their PII with Defendant. In doing so, Plaintiff and the Class entered into implied contracts with Defendant by

15

> which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached, compromised, or stolen. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

(Doc. No. 15 at 38). Plaintiff fails to allege the elements of a valid, implied contract; instead, he simply concludes that such a contract must have existed. Plaintiff's only factual support for the inference of a contract is that "Plaintiff and the Class entrusted their PII with Defendant." (Doc. No. 15 at 38). "In doing so," Plaintiff concludes that the parties entered into an implied agreement with unspecified security expectations that were allegedly breached. This is merely a recitation of Plaintiff's negligence and unjust enrichment claims, and it fails as a matter of law. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff's Breach of Implied Contract claim is therefore **DISMISSED**.

### e. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff boldly contends that "[e]very contract in this state has an implied covenant of good faith and fair dealing." (Doc. No. 15 at 39). Based on this legal principle, Plaintiff then claims that this covenant was breached by Axip Energy's failure to adequately secure Plaintiff's PII. According to Plaintiff, "Defendant acted in bad faith and/or with malicious motive in denying Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial." (*Id.*).

Contrary to Plaintiff's legal conclusions, the Supreme Court of Texas has held that not every contractual relationship creates a duty of good faith and fair dealing. *See Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1,* 908 S.W.2d 415, 418 (Tex. 1995). Specifically, the Supreme Court has imposed an actionable duty of good faith and fair dealing only when there is a special relationship. *See City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000) (citing *Arnold v.*

16

*National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)). Further, the Supreme Court of Texas specified that employer-employee relationships do *not* impose an actionable duty of good faith and fair dealing. *Id.* ("Similarly, we decline to impose a duty of good faith and fair dealing on employers in light of the variety of statutes that the Legislature has already enacted to regulate employment relationships."). Since Plaintiff and Axip Energy were in an employee-employer relationship, this claim is likewise **DISMISSED**.

### f. Declaratory Judgment and Injunctive Relief

Finally, Plaintiff seeks a declaratory judgment and an injunction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. (Doc. No. 15 at 40). Like the causes of action before it, this claim also fails. The Declaratory Judgment Act "alone does not create a federal cause of action." *Harris County, Texas v. MERSCORP, Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). "In a case of actual controversy within its jurisdiction," the Declaratory Judgment Act only authorizes a federal court to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a); *Id.* at 552–53.

In other words, the Act "enlarged the range of remedies available in the federal courts," but it did not create a new right to seek those remedies. *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950); *see also Okpalobi v. Foster*, 244 F.3d 405, 423 n. 31 (5th Cir. 2001) ("[T]he law makes clear that—although the Declaratory Judgment Act provides a *remedy* different from an injunction—it does not provide an additional cause of action with respect to the underlying claim."); *Tex. Med. Ass'n v. Aetna Life Ins. Co.*, 80 F.3d 153, 158–59 (5th Cir. 1996) (holding that plaintiffs were not entitled to a declaratory judgment under the Texas Uniform Declaratory Judgment Act because they did not first identify a cause of action under the state statute that they were trying to enforce). Here, Plaintiff could only seek a declaration that Axip Energy is liable on

one of the previous listed causes of action. Since the Court has now dismissed all of Plaintiff's prior claims, there is no basis for Plaintiff to pursue a declaratory judgment.

Similarly, Plaintiff does not adequately allege the requirements for injunctive relief. Declaratory judgments and injunctions involve separate inquiries and standards. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (collecting cases) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."). A plaintiff seeking injunctive relief must demonstrate the following: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Plaintiffs have the burden to establish each element. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 19–20 (2008).

Here, Plaintiff's suit stems from Axip Energy's fall 2023 data breach, and the main remedies sought are correspondingly retrospective. In order to obtain prospective relief, Plaintiff must show that future injuries are substantially likely and certainly impending. Plaintiff has failed to do so. Further, Plaintiff has failed to even mention the balancing of hardships and public interest factors. Since Plaintiff has failed to plead each element of injunctive relief, Plaintiff's request for injunctive relief is **DISMISSED**.

## IV.  Conclusion

Based on the foregoing, Axip Energy's Motion to Dismiss is hereby **GRANTED**, (Doc. No. 16), and Plaintiff's Amended Complaint is **DISMISSED**. (Doc. No. 15).

SIGNED this 26th day of June, 2025.

Andrew S. Hanen
United States District Judge